Good morning, Your Honor, and may it please the Court, David Blitzer on behalf of the petitioner, Romeo Villagomez. I'd like to reserve three minutes for rebuttal, and I will be conscious of monitoring my own time. Thank you. Your Honor, my client, Mr. Villagomez, is not removable for having committed an aggravated felony crime of violence. As the Court knows, an aggravated felony in immigration law is one of the severest penalties that fundamentally limits any kind of relief available. To be a crime of violence under the United States Code Title 18, Section 16a, one must be found of having committed a crime that involved the actual attempted or threatened use of physical force against the person of another. And for our purposes today, I'd like to focus on the second half of that, physical forces — sorry, physical force against the person of another. This Court does not write on a blank slate. Supreme Court in Johnson held that that term, physical force, must be violent force. In United States v. Borden, the Supreme Court held that that phrase, against the person of another, requires volitional conduct. Counsel, can you elucidate why Borden is relevant in this case? Your Honor, it's relevant because in Borden, the Court held that in order for there to be a match to a crime of violence, the mens rea has to be at least above that of recklessness. And, Your Honor, after Gomez, this Court held that that mens rea is no longer sufficient to just be one aspect of the statute. It's not just that some part of the statute involved volitional conduct. It's the physical force itself that must have volitional conduct. And so in this case, with Nevada's battery with substantial bodily harm statute, it is a general intent statute, which means that it has an intentional aspect, which is the intent to cause force or violence. But that term, force, under Nevada law is only an offense of touching. Can you name any Nevada case involving battery resulting in substantial injury where the Johnson, or Johnson-level force was not involved? Your Honor, I can't name a specific case that involves that exact fact pattern. But I would refer to, I would refer to Byers v. State. Now, that is not a battery with substantial bodily harm case, but it is a battery case. And in that case, the defendant flailed and struck police officers in the process. Now, again, there was no finding of substantial bodily harm, but that act of flailing was held to be intentional. And had that person caused injury under Nevada law, that person could have been caused with causing substantial bodily harm. And in that case, there is no intent to cause substantial bodily harm. The conduct is intentional. But the intent to cause harm or the intent to deliver Johnson-level force was not, would not have been present. Why not? Why isn't the intent to deliver Johnson-level force sufficient to satisfy that? The mens rea portion of the statute. Your Honor, because again, the intentional conduct is the flailing. And so if the person doesn't intend to actually injure the person, then that is reckless conduct. They're disregarding a substantial risk that their intentional conduct might cause substantial bodily harm. But that is not an intent to cause substantial bodily harm. And that's not a match with what the Court said and the Supreme Court said in Borden with this Court said in Gomez. If there's an intent to commit a battery that results in substantial bodily harm, that's not enough? That's not, Your Honor. And this Court said so in Gomez on page 996. And I'm referring to the Federal Reporter. This Court said that no longer can the inference that there is just active force and some result is enough under a crime of violence anymore. There needs to be the mens rea for the Johnson-level force. And as an element of the statute, that's not present. All the State has to prove is an intent to cause an offense of touching. There's no part of the statute that the State has to prove that you intend or even know that you're going to use Johnson-level force. What do we do about Fitzgerald? So, Your Honor, there are two aspects of Fitzgerald that the government argues are controlling in this case. The first is the mens rea issue we've just been talking about. And then the second is whether the statute necessarily has Johnson-level force. For the first one, Fitzgerald is not controlling in any manner. Fitzgerald interpreted the attempt version of the statute. The attempt version of the statute is fundamentally a different kind of crime than the completed version, because in Fitzgerald, the Court held that you need the specific intent to cause substantial bodily harm. That is a very different mens rea than the completed version of the crime. And Fitzgerald, the Court in Fitzgerald had no occasion to consider whether or not that, excuse me, Your Honor, the Court in Fitzgerald had no occasion to consider that the, in the completed version, required volitional conduct. Now, the substantial bodily harm element. Well, so in the completed version, you need general intent, correct? You need general intent. To cause substantial bodily harm. Why is that not enough? That's not enough, Your Honor, because again, in Borden and in Gomez, this Court interpreted Borden to say that you needed volitional conduct for Johnson-level force. And that's not volitional conduct. But general intent to cause substantially bodily harm is not volitional conduct? No, because under Nevada law and in general intent statute in general, you just need the intent for the conduct. And the conduct in this case is an offensive touching. You do not need to improve. So it's all about the force problem, then. It's not about the intent problem. Well, I would say it's both, Your Honor. So I would say — I see what you're saying, Your Honor. I think the problem is that there is not a mens rea above recklessness for Johnson-level force. There is an intent, right? There is volitional conduct for an offensive touching, but not for Johnson-level conduct. Okay. So why don't you get to the touching part? So Fitzgerald said that that was sufficient for this crime. Your Honor, Fitzgerald started to talk about whether or not the touching would necessarily entail Johnson-level force, but the Fitzgerald court quickly moved and pivoted to talking about the realistic probability test. And the court in Fitzgerald held that the defendant could not prove that there was a realistic possibility that someone could intend to offensively touch someone and not cause substantial bodily harm. That's very different than saying whether or not under the realistic probability test, the completed version has the same. And, in fact, again, I'd really focus on that specific intent element of the attempt statute. That specific intent element was dispositive in Fitzgerald. And the realistic probability test, we only go to that second step of looking for a particular case if it's not overbrought on its face. And on its face. So the problem was that they were interpreting Collins, which said that prolonged physical pain can include touching someone with third-degree burns. Yes. Why is that not substantial force enough? It's not substantial force, Your Honor, because one can touch, right, someone with third-degree burns. The level of force one is using is only offensive touching.  And afterwards — But if someone has third-degree burns, that's extremely painful, and it's torture. Your Honor, I don't disagree with that. But that is not how 18 U.S.C. 16a is written. 18 U.S.C. 16a focuses on the front end. It fronts the front end of Johnson-level force that one is using. And so if one can accomplish it with only an offensive touching, one is not using Johnson-level force. But it's not just mere offensive — it's touching third-degree burns. I don't know why you're lumping that out. Because it's — your focus — your question is focusing on the back end, right? What is the substantial bodily harm element? Right? The substantial bodily harm is the pain one feels from that offensive touching. But in 18 U.S.C. 16a, there's no result element. There's only the question of whether or not you've used a sufficient level of Johnson- level force volitionally. And so I'm focusing on the front end when you're touching someone because that act doesn't have Johnson-level force. And I would also — I don't know. If you intentionally touch someone with third-degree burns, how is that — I mean, that's substantially bodily harm. So what you're saying in that particular example, and I think I'm talking about the — the — whether or not one is using Johnson-level force. So it is substantial bodily harm, but one is not using Johnson-level force to accomplish the substantial bodily harm in that instance, right? I mean, I don't believe a touching would qualify as Johnson-level force. And I'd like the Court to also think about — Are you saying that touching the surgically burned person is not Johnson-level force? I am saying that it's not Johnson-level force, Your Honor. Even if it causes prolonged physical pain? That is correct, Your Honor. The way that — That can't be right. So imagine I hook up someone to, like, you know, a torture machine, and I just touch a button to turn it on. All I did was touch. I merely touched. Yes, Your Honor. You touched, and then the machine would create the Johnson-level force. Yes. That's the full volitional act, right? Right. So — But here, you touch someone with a burn. The burn creates the — the problem. So the fact that it's just a mere touch is not an — Well, Your Honor — — enough. I'd refer to Justice Thomas' concurrence in Borden for guidance here, which is we're talking about 16a versus 16b. 16b is likely the type of statute that Congress envisioned that would sweep in this kind of crime, the substantial risk that it would cause substantial bodily harm. Obviously, the Court knows that has been ruled unconstitutional. And Justice Thomas said we can't have 16a bear too much weight. And so in this case, right, the weight of 16a, and Congress chose to write the statute this way, is on the front end. What violent-level force are you volitionally bringing? And I'd again refer to the Court to Byers. In Byers, the person was merely flailing, right? They weren't intending to cause substantial bodily harm. Why not? They're flailing because they wanted to strike the police officer. Well, in that case — It wasn't because they were fallen. It's because they were intending to escape or commit violence on an officer. What's — They weren't intending to commit violence. They were resisting, I believe, a blood draw in that case. And so in that case, they were resisting. Their conduct was intentional. They were trying to prevent a blood draw from happening. But the important point is they weren't trying to cause violent physical force. They weren't trying to substantially harm the officers in that case. And so that, as a matter of the elements, is not a match to 16a. I'd like to say two more things about Gomez. So first, I think Gomez has implications for how this Court should read Borden. But I also think Gomez has implications for how this Court should read its past precedents. As the Court knows, in Gomez, this Court overturned many previous precedents of this Court that held this exact syllogism, that if you have active force and some bodily harm result, that you could infer that it was a crime of violence. And Gomez said that's no longer the case. I'd also like to say that Nevada law looks to California law as persuasive authority. In Hobbs and Byers, it specifically said so. And in Nevada case law, they cited particularly to People v. Colentrano. And People v. Colentrano was the case that interpreted California's assault and battery statutes and the level of mens rea in those statutes that the Court in Gomez found, on the assault level, was not a match. I reserve the remainder of my time for rebuttal. Please do. Very well. Ms. Lott. Good morning. May it please the Court. Melissa Lott on behalf of the United States Attorney General. The Court should deny the petition for review in this case because the offense of Nevada battery resulting in substantial bodily harm is a crime of violence aggravated felony. It's a general intent crime that requires an intentional use of force or violence against the person of another, and it must cause substantial bodily harm, which requires at minimum prolonged physical pain. Just as with the attempt version of the crime that the Court held was a crime of violence in Fitzgerald, the inference that it takes Johnson-level force to cause bodily injury applies here. Counsel, will you talk to us a little bit about Fitzgerald? Obviously, that's a strong case for the government. As you know, your opposing counsel didn't quite get to it in his time, but I think he's suggesting that we, in effect, either distinguish or can't overrule Fitzgerald, but he doesn't like Fitzgerald. What's your position on how much of an influence Fitzgerald has in this case? Yes, Your Honor. Fitzgerald's impact on this case is that the way that it construed Collins and the Vada statute is that that is a sufficient level of harm to show the violent force that Johnson requires. So force capable of causing physical pain or injury is shown where the crime does necessarily result in physical pain or injury, and that applies whether it's with the attempt version it's intended or with the completed version of the crime where it does result. Does it make any difference if we deal with the attempt portion of the statute as opposed to the actual carrying out of the touching? Not for the substantial bodily harm part, Your Honor. So when it comes to the level of force that the statute requires, that's the same. And Collins shows that, you know, the statute requires prolonged physical pain. And so it's not just the pain that results from a touching. It's something more than that. It's prolonged physical pain. It seems odd that the attempt version would be crime of violence, a harsher exposure than a completed felony. And I hope Mr. Blitzer comments on that because it seems upside down, but I understand the logic of his argument. What's the flaw in his argument? Yes, Your Honor. I do agree that it would be odd if the attempt were a crime of violence and not the completed version. When it comes to the mens rea for this offense, it's a general-intent crime. It requires a willful, meaning intentional, use of force or violence on the person of another. That meets Borden's requirement of a directed, targeted use of force on the person of another. We're looking at the use of force, not the result of the force when it comes to the mens rea. And this Court has held both prior to Borden and after Borden that similar aggravated battery-type offenses with general intent are crimes of violence or similar force or elements clause offenses. And that's because they require an intentional use of force or violence against a person, and then there has to be a resulting injury or harm of some kind. Your opposing counsel puts a lot of weight on the Gomez case. What's the government's response to that? Yes, Your Honor. The main difference between Gomez and this Nevada statute is that the Gomez case was construing an assault statute. And here we have a battery statute. We have an aggravated battery. So in Gomez, the definition of assault there, it was an attempted or threatened battery. So you're one step removed from the use of force. And so the statute in Gomez, the act that results in the use of force has to be intentional. But the use of force itself didn't. So the problem with his relying on it is that the statute itself distinguishes what we're dealing with here. Is that right? Yes. Yes, Your Honor. Counsel, can I ask, does the government believe that touching the skin of a person who has suffered third-degree burns, that is sufficient to meet Johnson force? Your Honor, before I answer your question, I would just say that in the Collins decision, the court uses touching the skin of someone with third-degree burns as an example of something that could cause a lot of pain. Exquisite pain. Yes, exquisite pain. But it doesn't go on to say that that would necessarily cause prolonged physical pain. So I think that it would require that the State court find that the touching of the third-degree burns actually not just resulted in the exquisite pain from the touching, but actually resulted in prolonged physical pain. So something more lasting. So you're saying the touching of a person with third-degree burns would be sufficient if it is prolonged, the pain produces prolonged pain? If it were prolonged, yes. If a court, but again, I mean, there, again, Collins talks about the exquisite pain from the touching. It doesn't go on to talk about prolonged. But why do you need the prolonged part? If the Nevada courts are interpreting prolonged physical pain to include touching of a person with third-degree burns, why is that not enough to meet the Johnson force requirement? That is a good, that is an excellent point, Your Honor. Yes, Johnson requires force that's capable of causing, yes, so it would be beyond that. So I guess my— If one use of physical force, and it's touching someone with third-degree burns, and the Nevada courts say that that's exquisite pain, why is that not enough? Yes, no, I agree with that. I think, I'm sorry, the point that I was trying to make was just that the difference between pain from the touching and the prolonged physical pain. But you're right, if it causes physical pain or injury, that is Johnson-level force. Is there anything in Nevada law that makes, is more clarifying on what prolonged means, temporal aspect, or is, I mean, exquisite pain is, doesn't seem prolonged to me, but maybe under Nevada law that's been construed to be so. It is, they— Is Collins the only case we have? There's Collins and there's the LeChance case that came after it. And both of those, I think that, you know, Collins talks about the subjective nature of pain, and the prolonged means that there has to be some sort of ongoing. And they don't exactly, they don't put any temporal limits on it, but, I mean, the facts in Collins, that was a case where someone was struck in the face and they suffered a fractured, like some kind of fracture to their temple. And they, they had ongoing pain for a few weeks. So the facts of the cases are, it's that type of pain, but, or I'm sorry, that type of, that type of outcome. So the case involved someone who had prolonged pain, but the court didn't specifically call that out in his decision? Is that what you're saying? The, that was the, that, those were the facts in that case. So that's an example, I think, but the court just focused on the subjective nature of pain, and that prolonged just has to mean something that's more lasting than the pain from the touching itself. I think, yes, so, I mean, the governance position is that Gomez is distinguishable from this case. This case, the intent in this case meets Borden. We have substantial bodily harm, and that meets Johnson Level IVs. And so. Can I ask you this? Admittedly, this is a non-published opinion on our court.  Yes. That does seem to cut in via Gomez's favor. Is it at odds with Fitzgerald or Fernandez? How should we consider Vega, if at all? Yes, Your Honor. So Vega is interesting because it, it, it was issued around the same time as the Fernandez case, and the Fernandez case dealt squarely with the same issue of whether, you know, there was an argument that the, that Borden required a mens rea as to not just the use of force, but the resulting harm. And the court, the court rejected that in Fernandez. In Vega, the court said that, you know, that, that there needed to be awareness of, of, of the harm. And I think that if we're looking at Borden and we're looking at harm in the sense of the use of force, you know, the, the harm that, that comes from, so for example, the, the examples in Borden of intentionally driving a vehicle or driving a vehicle and intentionally striking someone, driving a vehicle and knowingly striking someone, driving a vehicle and recklessly hitting someone who the driver didn't see, you know, that's really what Borden was talking about in terms of, of mens rea. And it's really about that, that use of force. So I would say that we have Fernandez, which, you know, had a different outcome from Vega. We also, there was, there was not a prior precedential decision on the Idaho statute in Vega, like we have with Fitzgerald here. And then I would also say that the example in Vega of the unconsented tap on the shoulder that causes someone to startle and bump their knee. That's just, there's just no indication that that sort of, that sort of fact pattern could, could result in a, a conviction for the Nevada battery resulting in substantial bodily harm statute. So for all of those reasons, I'd say it's distinguishable. Well done. Any questions? All right. Thank you. Thank you. Very well. I believe we have a little rebuttal time. Mr. Lutzer. Yes. Thank you, Your Honors. I'd like to address some of the things that you asked me to address while you were talking to the government. So first regarding Fitzgerald, I do think the Court can distinguish Fitzgerald. I think that it's distinguishable based on the mens rea. But if this Court holds that Fitzgerald controls as to the mens rea, I believe that it is irreconcilable with Borden. Judge Tinkovich, regarding your comments about I'm sorry, say that again. Do you think that Fitzgerald is irreconcilable with Borden? If the Court holds that Fitzgerald controls the mens rea issue in this case, you know, like they did in Collins — sorry, in Cotton, for example. Judge Tinkovich, your comments about attempt being more penalizing than completed version of the crime, it is strange. And again, I'd refer to two things. One is the way that Nevada has structured its attempt statute. It has structured its attempt statute to have a more volitional conduct in a way that oddly does make it more punitive for noncitizens. But I would also just say that that is sometimes what happens with the categorical approach. The categorical approach yields strange results. Many judges of many circuits have said this time and time again, but it is what this Court must follow. Regarding Gomez, the government brought up that it's a different statute. It's an estalt versus a battery. And, Your Honor, normally that would be quite a dispositive issue. But the issue is that in California, assault and battery have a common heart, which, again, is the Colenchuano case. The Colenchuano case held that recklessness was essentially — well, I should say Gomez held. The Colenchuano said that recklessness was a sufficient mens rea for the assault statute, but Colenchuano also talked about California's battery statute. So it implicates the same issue. And if you look at the wording of Gomez, it says that, you know, after boarding, it's not enough that the act be intentional. The force has to be intentional. Now, it doesn't say Johnson-level force, but it necessarily has to mean Johnson-level force. And I'd like to just briefly —  Does Nevada have an analogous assault statute similar to what Gomez's California? Off the top of my head, I am not sure if it exactly maps onto the California. But, again, I would say that in Byers and Hobbs, Nevada cited specifically to Colenchuano to interpret its battery statutes. So there's a direct link between the way Nevada would interpret its battery statute and the way California has interpreted its battery statute. And finally, Your Honors brought up Vega. And I would just like to disagree with the government that one can cause a level of harm under the Idaho statute in Vega that is different from that in Nevada. Right? In Collins, the Court said that, you know, touching third degree — a third-degree burn was sufficient, right, to be substantial bodily harm. And the examples brought up in Vega are not of a higher — sorry, of a lower level than that of Nevada. Very well. Thank you, Your Honors. Thanks to both counsel for your argument. In this case, the case of Villa-Gomez v. Garland is submitted. Thank you both.
judges: Tymkovich, SMITH, BUMATAY